IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| THE UNDERWRITERS GROUP, INC., | § | |
| | § | |
| Interpleader Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-05-334 |
| | § | |
| CLEAR CREEK INDEPENDENT | § | |
| SCHOOL DISTRICT, ET.AL. | § | |

## OPINION AND ORDER

Plaintiff, The Underwriters Group ("Underwriters"), filed an "Original Complaint in Interpleader and Declaratory Judgment" ("Interpleader") on June 9, 2005. Now before the Court is Underwriters' Motion for Summary Judgment ("Underwriters Motion) filed on February 27, 2006. Defendant Clear Creek Independent School District ("CCISD") filed a Response to Underwriter's Motion, and Underwriters filed a Reply. Defendant Braselton Construction Company ("Braselton") filed no response to Underwriters' Motion.

Also before the Court are Defendant Braselton's "Motion for Summary Judgment and Motion to Dismiss [Defendant CCISD's] Cross-Claims" ("Braselton Motion"), to which both Underwriters and CCISD filed a Response; and Defendant CCISD's "Cross-Motion for Partial Summary Judgment" ("CCISD Motion"), to which both  Braselton and Underwriters filed a Response. The Court has carefully considered the parties' submissions and now issues this Opinion and Order.

## JURISDICTION

Underwriters brought this Interpleader action on June 9, 2005, under Rule 22 of the Federal Rules of Civil Procedure and 28 U.S.C.§1332. The amount of the controversy exceeds $75,000.00. For purposes of diversity under 28 U.S.C. §1332, Plaintiff avers that it is a Florida corporation with

its principal place of business in Florida.  (Interpleader ¶ 1).  Defendant Braselton is a Texas corporation with its principal place of business in Texas (Interpleader ¶ 3; Braselton's Answer ¶ 3); and Defendant CCISD is an independent school district created under the laws of Texas and located in Galveston County.   (Interpleader ¶ 2; CCISD's Answer ¶ 2).   Accordingly, the Court has jurisdiction over this matter.

<u>**VENUE**</u>

Underwriters originally brought this Interpleader action in the Federal District Court located in Galveston, Texas pursuant to 28 U.S.C. § 1391.  Defendant CCISD is located in Galveston County. No party contests venue and the Court finds venue to be proper.

<u>**BACKGROUND**</u>

On October 7, 2004, Braselton submitted a bid proposal for the construction of several CCISD Elementary School Gymnasiums Additions in the amount of $5,425,436.00 ("the Project"). (Braselton Mot., Ex. A).   In its bid proposal, Braselton identified "Financial Casualty & Surety" as its "proposed surety."  (Braselton Mot., Ex. A at ¶ 8).  Braselton also agreed in its bid proposal to "sign and return [to CCISD] the Agreement with the Bonds, Insurance, and other documents required by the [CCISD] Bidding Requirements within 5 days after they are presented to the Offeror [Braselton] for signature."  ( Braselton Mot. Ex. A at ¶ 9.5).

Braselton's bid for the Project was selected by CCISD.  On October 26, 2004, CCISD and Braselton executed a written contract that consisted of a  "Standard Form of Agreement between Owner and Contractor" ("Contract") and a "Supplementary Conditions to the Contract for Construction" ("Supplementary Conditions").  (Braselton Mot., Ex. B & C).[1]  The Contract and

---

[1] The Court refers to the bates numbers contained in the Exhibits when provided.

Supplementary Conditions required the execution and submission of performance and payment bonds, issued by a qualified surety company,[2] before work could commence on the Project. (Braselton Mot., Ex. B at 700-34; Ex. C at 800-15, 800-17).

On October 25, 2004, a day before the parties executed the Contract and Supplementary Conditions for the Project, the documentation provided reflects First Mountain Bancorp issued a "Trust Receipt." (Braselton Mot., Ex. G). The Trust Receipt set forth "Clear Creek Independent School District" as the named beneficiary and further provided, as a reference, "Elementary School Gymnasiums Package #1 / Braselton Construction Company, Inc." (Braselton Mot., Ex. G). According to CCISD, it was not then aware of the existence or issuance of this Trust Receipt. (CCISD Mot. at 2-3).

On October 29, 2004, a Performance Bond was purportedly issued, witnessed, and executed between the Surety, "Financial Casualty & Surety," by Senior Underwriter Robert S. Harrison, and

---

[2] The Supplementary Conditions provided the following:

**ARTICLE 11 – INSURANCE AND BONDS**
11.5.3 The Performance Bond Form and The Payment Bond Form included herein shall be executed and submitted to the Architect in duplicate prior to the commencement of the work. *The surety companies must be acceptable to the Owner and licensed admitted carriers in the State of Texas; and the companies must appear in a current Federal Treasury list as Companies Holding Certificates of Authority as Acceptable Sureties on Federal Bonds and as Acceptable Reinsuring Companies.*

11.5.4 *Each bond shall be of penal sum equal to 100% of the Contact Sum and shall be compatible with the provisions of the governing authority.* The Contractor shall file copies of each bond with the county clerk and furnish the Owner with a file receipt. The bonds shall remain in force throughout the warranty period of the contract. The Work will not be started until the bonds and issuing companies have been accepted as satisfactory by the Owner. The original bonds will be delivered to the Owner with an authorized power of attorney attached. [Emphasis added]. (Braselton Mot., Ex. C at 800-17 - 800-18).

the Principal, Braselton Construction Company, by President Walter Drane, in Corpus Christi, Texas. (Braselton Mot., Ex. D at 810-1; 810-2).  A Payment Bond was also issued and signified the Principal as Braselton Construction Company and the Surety as Financial Casualty and Surety.  (Braselton Mot., Ex. E at 820-1).[3]

Braselton commenced work on the Project and, shortly thereafter, on November 19, 2004, submitted an "Application and Certificate for Payment" ("Application") to CCISD through the Project architect.  (CCISD Mot., Ex. 1).  The Application consisted of several items of scheduled charges equaling $289,755.22.  Included in this amount were charges for "Bonds and Insurance" in a combined stated total of "$257,700.00."  (CCISD Mot., Ex. 1).[4]  The Project architect certified the Application on November 22, 2004, and the documentation reflects that CCISD issued a check to Braselton for the total amount of $289,755.22 on December 3, 2004.  (CCISD Mot., Ex. 1 and Ex. 2). From the first payment draft it received from CCISD, Braselton paid "The Underwriters Group" a premium in the

amount of $208,788.20, for the Trust Receipt previously issued on October 25, 2004.[5]  (Braselton Mot. at 2; Ex. F).

Braselton continued work on the Project and, on March 1, 2005, submitted its fourth

---

[3] Although Defendant Braselton informs the Court that the Payment Bond was also issued on October 29, 2004, the signature page for the Payment Bond was not included in the Exhibits.

[4] Based on the documentation submitted, and for purposes of clarity, it appears that 100% of the stated total for the "Bonds and Insurance" was paid by CCISD.  The remainder of the amount CCISD paid to Braselton was paid based on a percentage of other stated charges. (CCISD Mot., Ex. 1 (Continuation Sheet)).

[5] The Court notes that no evidence has been presented showing how or when payment was issued by Braselton for the Performance and Payment bonds that were purportedly executed and issued on October 29, 2004.

Application in the amount of $397,814.04. (Braselton Mot. at 2; Ex. H). Shortly thereafter, Braselton somehow discovered that the payment and performance bonds were not valid. (Braselton Mot. at 2). CCISD contends that in or around March 2005, it learned "from an unpaid subcontractor of Braselton, who had been attempting to make a claim on the payment bond, that the bonds were likely fraudulent." (CCISD Mot. at 3; CCISD Original Answer, ¶ 16). CCISD contended that the continuation of the Project, in absence of the surety bonds, would have been a violation of Texas law as proscribed by Texas Government Code § 2253.021. Therefore, on or about March 9, 2005, CCISD gave written notice to the President of Braselton Construction that it was to suspend work on the Project immediately (Braselton Mot., Ex. I); and also provided  Braselton with seven (7) days to remedy the problem by securing valid payment and performance bonds. (Braselton Mot. at 3). In addition, due to the "subsequent developments regarding the validity of the Performance and Payment Bonds," on March 10, 2005, the Project architect nullified his certification of Braselton's "Application for Payment No. 4" (Braselton Mot., Ex. J). On March 23, 2005, CCISD informed Braselton that it was terminating the Contract for the Project because Braselton had not yet provided valid bonds. (Braselton Mot., Ex. K; CCISD Mot. at 4).

Following the termination of the Contract, a series of letters were exchanged between the parties in which competing demands were made for the return of the funds used to pay Underwriters for the Trust Receipt.  The first was a letter dated March 28, 2005, written by Braselton's attorney in which he demanded return of the $208.788.20 that Braselton paid to Underwriters "to obtain bonding for a construction project." (Braselton Mot., Ex. M).  Underwriters, through its attorney, responded in a letter dated March 31, 2005, that set forth its understanding of the events that had transpired and also provided, in part, "[b]ecause the CCISD rejected Mr. Harrison's individual surety bond backed by the trust receipt, *our client must receive the original trust receipt before refunding the funds* paid

by Braselton in connection therewith." [Emphasis added].  (Braselton Mot., Ex. N).[6]  In a letter dated April 4, 2005, Braselton's counsel responded to Underwriters by representing that CCISD "rejected the proposed bond," confirming that Braselton was not in possession of the original trust receipt, and once again demanding the return of the funds.  (Braselton Mot., Ex. O).  On April 5, 2005, Underwriters sent a letter to CCISD setting forth its understanding of the facts, and requesting written verification that CCISD did not have the original trust receipt and that CCISD did not have a "claim against these funds or this trust receipt so that our client may disburse the funds to Braselton." (Braselton Mot., Ex. O).  CCISD responded in a letter dated April 6, 2005, through their attorney, by also making a demand for the funds. (Braselton Mot., Ex. Q; Interpleader at ¶ 8).

Confronted with these conflicting claims, on June 9, 2005, Underwriters brought this Interpleader action and also filed a Motion to Deposit Funds, in an amount totaling $208,788.20, into the registry of the Court.  On June 13, 2005, the Court by Order accepted the payment of the funds into the Court Registry.

## I.

## __INTERPLEADER__

An interpleader action is an equitable remedy that has long existed for the purpose of enabling "a neutral stakeholder, usually an insurance company or a bank, to shield itself from liability for paying over the stake to the wrong party.  This is done by forcing all the claimants to litigate their claims in a single action brought by the stakeholder." 7 Charles Alan Wright, Arthur Miller & May Kay Kane, *Federal Practice and Procedure* § 1702 (3d ed. 2001).

A court analyzes an interpleader action in "two distinct steps."  The first step requires "the

---

[6]The Court observes that only the first page of this letter was provided.

court to decide whether the jurisdictional requirements for an interpleader action have been met."
*General Electric Capital Assurance v. Van Norman,* 209 F. Supp.2d 668, 670 (S.D. Tex. 2002).
Generally, "[i]f there is a single fund at issue and adverse claimants to that fund, this requirement is
usually satisfied." *General Electric,* 209 F.Supp.2d at 670 (citing to *Rhoades v. Casey*, 196 F.3d 592,
600 (5th Cir. 1999).  However, the party seeking the interpleader bears the burden of establishing that
the requirements are satisfied.[7]  7 Wright, Miller & Kane, *supra* § 1714.  If the party seeking
interpleader, commonly referred to as the stakeholder, satisfies the interpleader requirements, he may
seek dismissal from the action.  *Id.*

After concluding that the requirements of an interpleader action are satisfied, a court moves
on to the second step of the analysis which requires the court to determine the "'claimants' respective
rights to the fund." *General Electric*, 209 F. Supp.2d at 670 (citing to 7 Wright, Miller & Kane, *supra*
§ 1714).  At this stage, the interests of the respective claimants are adverse and may be adjudicated
by summary judgment if there are no genuine issues of material fact regarding which claimant is
rightfully entitled to the interplead funds.  7 Wright, Miller & Kane, *supra* § 1714.  However, when
genuine issues of material fact exist, each claimant bears the burden of proving his right to the fund
by a preponderance of the evidence at trial by the ultimate finder of fact.  *General Electric*, 209
F.Supp.2d at 670; 7 Wright, Miller & Kane, *supra* § 1714.

### A.  Rule 22 Interpleader

#### 1.  Satisfaction of Requirements

Underwriters brought this Complaint for interpleader under Rule 22 and 28 U.S.C. § 1332,
seeking a declaratory judgment that it has no further liability or obligation to either Braselton or

---

[7]An interpleader action may be brought under Rule 22 of the Federal Rules of Civil
Procedure or under 28 U.S.C. § 1335, and the requirements of each are slightly different.

CCISD, requesting dismissal from the action, and further seeking attorney fees for filing the interpleader action. (Interpleader at 3-4). Thereafter, Underwriters also filed a Motion for Summary Judgment in which it seeks declaratory judgment and again seeks dismissal from the action without further costs or liability. (Underwriters Mot. at 2-3). Defendant Braselton filed no response to Underwriters' Motion. Defendant CCISD filed a Response to Plaintiff's Motion in which they contest any award of attorney fees to Underwriters.

Rule 22 provides that "[p]ersons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. . . ." Fed. R. Civ. Proc. 22. Unlike a statutory interpleader action, an action commenced under Rule 22 does not require the stakeholder interplead the funds into the registry of the court. *Compare* 28 U.S.C. § 1335(a) *with* Fed. R. Civ. Proc. 22.

As evidenced by the letters submitted, once it was discovered that the Performance and Payments bonds issued for the Project were invalid, Underwriters was faced with competing claims from both Braselton and CCISD for the return of the funds used to purchase the Trust Receipt. (Braselton Mot., Ex. M (March 28, 2005 Letter from Braselton); Ex. N (March 31, 2005 Letter from Underwriters); Ex. O (April 4, 2005 letter from Braselton); Ex. P (April 5, 2005 Letter from Underwriters); & Ex. Q (April 6, 2005 Letter from CCISD)). Essentially, Braselton demanded Underwriters return the funds to it because it issued the check to Underwriters to purchase the Trust Receipt. CCISD made a similar demand to Underwriters alleging that they were entitled to the funds because its money was used to procure the Trust Receipt. Rather than run the risk of paying the proceeds to the wrong person, and thereby potentially incurring multiple liability, Underwriters filed this action because the claimants had not formally settled their dispute over their respective claims to the fund. Underwriters does not claim any right of offset, credit or other entitlement to the

8

proceeds.  Moreover, there is no basis to conclude that Underwriters has participated in the litigation as an adversary or ally to either claimant.  *See Rhoades v. Casey*, 196 F.3d at 603.

Finally, although not required under Rule 22, Underwriters immediately moved to deposit the entire amount of the funds into the Court Registry and, on June 13, 2005, the Court ordered the deposit of the funds into the Court Registry.  Payment of the entire amount of the fund into the Court Registry constitutes an unconditional tender.[8]  *See Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1165 (5th Cir. 1976).

The Court concludes that the Rule 22 interpleader requirements have been satisfied and, having made this determination, turns next to consider whether Underwriters may be dismissed from the action.  *See General Electric*, 209 F. Supp.2d at 670.

### 2.  Dismissal of Underwriters as Stakeholder

CCISD contends that Underwriters must still be considered an interested party to the action and is not entitled to be dismissed, because of Braselton's counterclaim against Underwriters.  The Court observes that Braselton did file a "counterclaim" against Underwrites in which it seeks attorney fees and prejudgment interest because it contends that Underwriters acted in bad faith in failing to return the interpled funds to Braselton when it was clear that CCISD has no legal or equitable interest in the funds or, in the alternative, that Underwriters was dilatory in failing to interplead the funds. (Braselton's Answer, Counterclaim, and Joinder at 2-3).   In addition, Braselton asserts that Underwriters is not entitled to attorney fees because it unreasonably delayed in filing the action; bringing an interpleader action is part of Underwriters' ordinary cost of doing business and, as such,

---

[8] Underwriters requests the Court consider attorney fees and costs in this case, but did not condition the tender of the funds on this request.  Accordingly, Underwriters request is not tantamount to a conditional tender of the funds.

these fees and costs should not be shifted to the owner of the funds; and Underwriters is not an innocent stakeholder because it has not unconditionally interpled the funds into the court.

Initially, the Court observes that Braselton filed no response to Underwriters Motion in which it seeks to be dismissed from claims or liability. Nevertheless, the Court will proceed to address this matter.

"Although a factual dispute may exist as to the rightful ownership of the fund, that dispute does not preclude the granting of summary judgment in favor of the interpleader. It is the very nature of an interpleader action that two or more parties claim rights to certain money or property." *Commerce Funding Corp. v. Southern Financial Bank*, 80 F.Supp.2d 582, 585 (E.D. Va. 1999). Nevertheless, a court may delay or deny discharge of the stakeholder if there are "serious charges that the stakeholder commenced the action in bad faith." *Mendez v. Teachers Ins. & Annuity Assoc.*, 982 F.2d 783, 788 (2nd Cir. 1992). However, no such evidence exists here of bad faith by Underwriters. It is widely recognized that a stakeholder is "entitled to bring an interpleader action where competing claims for the stake are not patently invalid, even if one claimant asserts that its right to the stake is so certain as to make any competing claim frivolous." 21 Fed. Proc., L. Ed. § 49:5 (West 2006). Given the facts and circumstances in the present case, Underwriters not only had reasonable fear of vexatious and conflicting claims, but was, in fact, actually presented with competing demands for the funds. Moreover, even though Braselton asserts that Underwriters was dilatory in filing the action, the facts clearly do not support any such claim. At most, two months elapsed from the time Underwriters was notified of the competing claims and the time it filed this interpleader action. Given these facts, it is difficult to conceive how any reasonable trier of fact could conclude that Underwriters unduly delayed in filing the interpleader action or commenced the action in bad faith. *Contra Mendez,* 982 F.2d at 787-88 (2nd Cir. 1992) (stakeholder not only commenced interpleader action in

10

bad faith where it not only knew, but also conceded for months that competing claim was baseless, and also unreasonably delayed in tendering the allegedly disputed funds for nearly a year and a half). Where the facts do not clearly demonstrate that the stakeholder acted in bad faith or was dilatory in filing an interpleader, it is improper for a court to even consider imposing costs or fees against the stakeholder. *See Murphy*, 534 F.2d at 1164 (holding that fees and costs should not be assessed against life insurance company because it did not delay, nor did it act in bad faith by failing to pay the undisputed portion of the policy proceeds); *Gelfgren v Republic Nat'l Life Ins. Co.*, 680 F.2d 79, 81 (9th Cir. 1982) (trial court did not err in refusing to award costs against insurance company that interpleader of life insurance proceeds where competing claims existed).

Notwithstanding these points, it is perhaps more important to consider the nature of the "counterclaims" presented. Specifically, as alleged, Braselton's counterclaims fail to raise any claims of independent liability by Underwriters. Instead, the basis for Defendant Braselton's counterclaims appear to rest on the contention that an interpleader was unnecessary because it was evident that Braselton was entitled to the funds and, even if it were not, that Underwriters delayed in bringing the action therefore depriving Braselton of the use of these funds. However, under interpleader rules, Underwriters is shielded from these "counterclaims." *See Metropolitan Life Insurance Company v. Barretto*, 178 F.Supp.2d 745, 747-48 (S.D. Tex. 2001). Specifically, the court in *Metropolitan Life Insurance Company v. Barretto* explains:

> [a]n interpleader suit serves to shield an uninterested stakeholder from the costs of unnecessary, multiple litigation. [Citation omitted]. 'Were the defendants in the interpleader action permitted to carry forward with counterclaims against the stakeholder based upon the same interpleaded funds, the very purpose of the interpleader action would be utterly defeated.' [Citations omitted].

*Id.* Other courts have reached the same conclusions and summarily dismissed such counterclaims

against the stakeholder. *See e.g., Daniels v. Equitable Life Assurance Soc. of the United States*, 35 F.3d 210, 214-15 (5th Cir. 1994) (where an interpleader is found proper, breach of contact and tort claims are collaterally estopped); *Equitable Life Assurance Society v. Jones*, 679 F.2d 356, 358 (4th Cir. 1982) (stakeholder is "not to be obliged to be at the expense and risk of defending an action; but on giving up the thing ..., he is to be relieved, and the court directs that the persons between whom the dispute really exists shall fight it out at their own expense"); *Lutheran Brotherhood v. Comyne*, 216 F.Supp.2d 859, 862-63 (E.D. Wisc. 2002) (counterclaims based on plaintiff having opted to proceed on interpleader rather than choose amongst competing claims will be rejected because plaintiff is entitled to pursue interpleader relief); *Monumental Life Ins. Co. v. Lyons-Neder*, 140 F.Supp.2d 1265, 1272-74 (M.D. Ala. 2001) (summary judgment granted on counterclaims against plaintiff for bad faith and breach of contract because insurance company properly initiated interpleader action to determine rightful beneficiary of policy proceeds where deceased's wife was murder suspect); *United States Trust Co. of New York, et.al. v. Alpert, et.al.,* 10 F.Supp.2d 290, 307 (S.D.N.Y. 1998), *aff'd*, 168 F.3d 630 (2nd Cir. 1999) (proper commencement of interpleader did not give rise to counter-claim against stakeholder for failing to pay funds to counter-claiming defendant without benefit of interpleader action to adjudicate conflicting claims).

Consequently, the Court concludes that Braselton's allegations complain of Underwriters' actions, which are simply self-styled as "counterclaims," are "the result of its utilizing the protections afforded by the interpleader" and, therefore, can not constitute any independent cause of action against Underwriters.[9]  *Barretto*, 178 F.Supp.2d at 748.  Accordingly, the Court concludes that

_____

[9] In reviewing Braselton's counterclaim, the Court observes that Braselton relies upon *Bauer v. Uniroyal Tire Co.*, 630 F.2d 1287, 1290 (8th Cir. 1980) and *Gelfgren v. Republic Nat'l Life Ins. Co.*, 680 F.2d 79, 82 (9th Cir. 1982) to support its claim for pre-judgement interest. However, the Court finds that the facts in those cases distinguish them significantly from the

Underwriters is shielded from Braselton's "counterclaims" and, as such, these claims must be dismissed. *Id.* Because Underwriters has no further obligation or liability to the parties under a theory for failing to pay them the disputed proceeds, the Court concludes that Underwriters is entitled to dismissal. *See Barretto*, 178 F.Supp.2d at 747-48; *Daniels*, 35 F.3d at 214-15.

### C. <u>Underwriters Request For Attorney Fees & Costs</u>

In addition to seeking dismissal, Underwriters also requests attorney fees in the amount of $12,108.00 for having to file the interpleader action. (Underwriters Mot. at 3). In its Response to Underwriters' Motion, CCISD opposes the request. (CCISD Mot. at 4-6). Although Braselton filed no response to Underwriters' Motion, its opposition is also noted. (Braselton Answer & Counterclaim).

It is well-settled that "a district court has authority to award reasonable costs and attorney's fees to the disinterested stakeholder in rule interpleader actions." *See Rhoades v. Casey*, 196 F.3d at 603; *Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 696 F.2d 359, 364 (5th Cir. 1983). An award of attorney fees and costs to a stakeholder, however, is not automatic. The decision rests within the discretion of the court. *See Gulf Oil Corp. v. Olivier*, 412 F.2d 938, 946 (5th Cir. 1969); *Lincoln Income Life Ins. Co. v. Harrison,* 71 F.R.D. 27, 31-32 (W.D. Okl. 1976). Accordingly, a court may,

---

present case. In both *Bauer* and *Gelfgren*, the stakeholder filed the interpleader, but did not pay the stake into the court registry, choosing to wait until the actions concluded several years later. In both cases, the courts awarded prejudgment interest after concluding that the stakeholders would otherwise be unjustly enriched for having unrestricted use of the funds for the several years it took to litigate the cases to conclusion. *Bauer*, 630 F.2d at 1290 (interest appropriate when stakeholder delayed more than a year in filing interpleader action and, never having paid the funds into the court registry, had full use of the funds during that time); *Gelfgren*, 680 F.2d at 82 (more than five years elapsed until the case concluded and during that time the stakeholder had full use of the fund and earned interest on it). Unlike those cases, in the present case Underwriters promptly requested to pay the entire amount of funds into the Registry of the Court, and the Court, shortly thereafter, ordered Underwriters to do so.

for example, deny a stakeholder's request for costs and attorneys fees if there is culpability on the part of the stakeholder for failing to act in good faith and with diligence.  *See Murphy*, 534 F.2d at 1164.

Generally, in determining whether attorneys' fees and costs should be awarded, a court will examine the following factors: "(1) Whether the case is simple or involved; (2) Whether the stakeholder performed any unique services for the claimants or the court; (3) Whether the stakeholder acted in good faith and with diligence; (4) Whether the services rendered benefitted the stakeholder; (5) Whether the claimants improperly protracted the proceedings."  7 Wright, Miller & Kane, *supra* § 1719.

In his affidavit, counsel for Underwriters states that a total of 85.8 hours was spent on this matter.  According to counsel, 36.4 hours were billed for the "initial work" consisting primarily of "investigating the nature of the dispute, researching relevant law, analyzing jurisdiction and venue, and preparing the appropriate pleadings" at a reduced hourly rate of $135.00 instead of the normal billing rate of $160.00 per hour "to reduce further expense."  (Underwriters Mot., Affidavit of Ronald J. Restrepo ("Affidavit") at ¶¶ 7-8).  Underwriters also seeks expenses in this case in the amount of $640.00.  (Underwriters Mot., Affidavit at ¶ 9).

Although counsel's affidavit is helpful, in order to allow the Court to make such a determination in this case, Underwriters is hereby **ORDERED** to submit, within ten (10) days from the date of this Order, a more detailed accounting of the attorneys' fees and documentation for the costs it seeks to recover.  In the event that Underwriters chooses not to provide a more detailed accounting, then Underwriters must signify this in a statement filed with the Court and served on the parties within the ten (10) day time period.  Defendants will then have ten (10) days to respond to Underwriters' briefing.  After that time, the Court will rule on whether Underwriters is entitled to an

award of attorneys' fees and costs and, if so, in what amount.  The Court will thereafter enter a Supplemental Order and Judgment.

## II.

## DEFENDANTS' CROSS-MOTIONS FOR SUMMARY JUDGMENT

After concluding that the interpleader action was properly brought, the Court proceeds to the second step of the analysis that requires it to determine the "claimants' respective rights to the fund." *General Electric Capital Assurance v. Van Norman,* 209 Fed. Supp.2d at 670.  Both Braselton and CCISD have filed competing motions for summary judgment.

### A.  Standard of Review

Under Federal Rule of Civil Procedure 56(c), "if there is no genuine issue as to any material fact...the moving party is entitled to judgment as a matter of law."  Federal Rule Civ. Proc. 56(c).  The inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Once the moving party makes a properly supported motion for summary judgment, the burden shifts to the non-movant to show that summary judgment should not be granted, that there is a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-25 (1986).  A party opposing summary judgment must marshal sufficient facts to show that there is a genuine issue of material fact.  *Id.* at 323-24.  To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Anderson*, 477 U.S. at 248; *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000).

**B.  Braselton's Motion**

The central issue presented in this case is simple:  to whom do the funds belong?  In its Motion, Braselton contends it is entitled to summary judgment in its favor because the undisputed facts show that it "is the only party with present entitlement to the deposited funds" and that "CCISD does not have any entitlement to the funds" because the funds used to acquire the Trust Agreement "were, and are, Braselton's money."  (Braselton Mot. at 4).  Braselton also appears to aver that CCISD is not entitled to the funds because it was not in privity with regard to the purchase of the Trust Receipt and contends  that it was not part of the Contract between Braselton and CCISD. (Braselton Mot. at 5).

In deciding Braselton's Motion, the Court is required to draw all reasonable inferences from the summary judgment evidence in favor of CCISD, the non-moving party.  *Anderson*, 477 U.S. at 248.  A careful review of the evidence submitted reveals that the Trust Receipt [10] was issued on October 25, 2005, a day before the parties executed the Contract for the Project and several days before the Performance and Payment Bonds were purportedly issued and executed.  The Trust Receipt was apparently purchased to back the performance and payment bonds required for the Project.  The Court observes that in the single-paged document entitled "Trust Receipt,"[11]  CCISD is expressly named as the Beneficiary, along with a  reference of the "Elementary School Gymnasiums Package

---

[10] Aside from the one-page document entitled Trust Agreement, no other evidence was offered that provided reflecting the terms, conditions, or payment for the Trust Receipt between the parties.

[11] A "trust receipt" is defined as a "a pre-UCC security device."  Black's Law Dictionary (8th ed. 2004).  It is considered a "method of financing commercial transactions by which title passes directly from the manufacturer or seller to a banker or lender, who as owner delivers the goods to the dealer on whose behalf the banker or lender is acting, and to whom title ultimately goes when the banker's or lender's primary right has been satisfied."  *Id.*

#1 / Braselton Construction Company, Inc." (Braselton Mot., Ex. G). The "Trust Receipt" also provides, in part, the following:

> FIRST MOUNTAIN BANCORP, formed under the laws of the State of Nevada, with the authorized signatures below, hereby ***irrevocably acknowledge with the full Trustee responsibility*** with a value of FIVE MILLION NINE HUNDRED SIXTY FIVE THOUSAND THREE HUNDRED SEVENTY SEVEN US DOLLARS ($5,965,377.00 US Dollars), ***which is being held by an FDIC Insured Bank*** in the form of a SKR on behalf of First Mountain Bancorp for one year ***for the above named beneficiary*** located at 2425 East main Street, League City, TX 77573-2799.
>
> Payment under this TRUST RECEIPT will be made to the beneficiary upon receipt of an invoice stating that such amount represents funds owed by obligee and are to be used to repay amounts outstanding certified to the offset and recovery by Robert Harrison, the Individual Surety and conditioned by the Payment & Performance Bond criteria until exonerated by the Obligee.
>
> *   *   *
>
> ***All rights arising from the ownership of this TRUST RECEIPT*** and this cash or cash equivalent represented thereby ***shall be freely assignable and transferrable*** without payment to us of any transfer fee ***upon the written instructions from the Beneficiary*** hereof and we warrant our strict compliance therewith. *   *   *

[Emphasis added]. (Braselton Mot., Ex. G).

The evidence also reveals that shortly after Braselton commenced work on the Project, it submitted an Application for payment, which consisted of a cost for "Bonds and Insurance" with a scheduled value of "$257,700.00." (CCISD Mot., Ex. 1). The Project architect certified the Application on November 22, 2004, and the documentation reflects that on December 3, 2004, CCISD issued payment to Braselton for this amount, as well as other charges, totaling $289,755.22. (CCISD Mot., Ex.1 & 2). Braselton then issued a check, in the amount of $208,788.20, to "The Underwriters

17

Group" to pay for the Trust Receipt.[12]  (Braselton Mot., Ex. F).  Notably, Braselton acknowledges paying Underwriters from the funds it obtained from CCISD.  (Braselton Mot. at 2).

Based on the evidence presented, this Court concludes that a genuine issue of material fact exists as to who is entitled to the interpleaded funds and can not conclude, as a matter of law, that Braselton, having merely written a check to Underwriters for the previously issued Trust Receipt, is the owner of those funds.  Braselton's contention that CCISD is not entitled to the funds because it was not a party to the Trust Receipt, and the construction Contract did not require the issuance of a Trust Receipt, does not alter the Court's conclusion that there is a genuine issue for trial.  Especially considering that, while apparently unknown to CCISD at the time of its issuance, CCISD was expressly named the beneficiary of the Trust Receipt and, as the beneficiary, appears to enure some rights of ownership of the Trust Receipt that include assignment or transfer.  (Braselton Mot., Ex. G).  Accordingly, Braselton's Motion for Summary Judgment (Instrument No. 30) must be **DENIED**.

### C.  <u>CCISD's Motion</u>

In its Motion, CCISD contends that the Court should impose a constructive trust on the funds in its favor because the funds Braselton used to pay the Trust Receipt were wrongfully obtained from CCISD.  On this basis, CCISD maintains that the funds belong to it and, as such, summary judgment should be granted in its favor.

Texas law recognizes constructive trusts as an equitable remedy "imposed by law because the person holding the title to property would profit by a wrong or would be unjustly enriched by a wrong or would be unjustly enriched if he were permitted to keep the property." *Matter of Monnig's Dept. Stores, Inc. v. Azad Oriental Rugs, Inc.*, 929 F.2d 197, 201 (5th Cir. 1991), *quoting from Omohundro v. Matthews*, 341 S.W.2d 401, 405 (Tex. 1960); *see also*, *Hudspeth v. Stoker*, 644 S.W.2d 92, 94

---

[12] *Supra*, note 5.

(Tex.App.–San Antonio 1982, *writ ref'd*) (equitable device imposed by court to prevent unjust enrichment).  The party seeking to impose a constructive trust must establish the existence of each of the following elements: (1) actual or constructive fraud; (2) unjust enrichment of the wrongdoer; and (3) tracing to an identifiable res.  *Matter of Monnig's*, 929 F.2d at 201;  *see also, Burkhart Grob Luft und Raumfahrt GmbH & Co. K.G. v. E-Systems, Inc.*, 257 F.3d 461, 469 (5th Cir. 2001).

To establish actual fraud, Texas law requires: (1) the party to be charged made a material misrepresentation that was false; (2) it knew the representation was false *or* made it recklessly as a positive assertion without knowledge of the truth; (3) it intended to induce the aggrieved party to act on the representation; and (4) the aggrieved party actually and justifiably relied on it.  *Ernest & Young, LLP v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

Even when actual fraud can not be established, a constructive trust may still be applied where there is a showing of constructive fraud.  *Meadows v. Bierschwale*, 516 S.W.2d 125 (Tex. 1974).  To establish constructive fraud there must be an existing or prior confidential relationship.  *Panama-Williams, Inc. v. Lipsey*, 576 S.W.2d 426, 432 (Tex.Civ.App.–Houston [1[st] Dist.] 1978), *aff'd after remand*, 611 S.W.2d 917 (Tex.Civ.App.–Houston [14[th] Dist.] 1981, *writ ref'd n.r.e.*).  However, the mere subjective confidence among business associates is insufficient to establish a confidential relationship exists for purposes of supporting a claim of constructive fraud.  *Consolidated Gas & Equip. Co. v. Thompson*, 405 S.W.2d 333, 336 (Tex. 1966).

Here, the burden of showing either actual or constructive fraud sufficient to impose a constructive trust on the interplead proceeds rests with CCISD.  *Matter of Monnig's*, 929 F.2d at 202.  The Court must draw all justifiable inferences from the summary judgment evidence in favor of the non-moving party.  In reviewing the evidence, the Court finds that the facts and circumstances in this case certainly raise questions concerning the possibility of improper actions, however, no evidence

has been proffered to establish either actual or constructive fraud by Braselton so as to allow the Court to impose a constructive trust on the interpleaded funds in favor of CCISD. The Court observes that in support of its Motion, CCISD includes the affidavit of Ron McPherson, but finds that the affiant's statements are couched only in terms of his beliefs and perceptions of Braselton's knowledge and intent. (CCISD Mot., Exhibit A at ¶ 4). An individual's perceptions or beliefs are insufficient evidence to establish fraud.

Although CCISD also appears to argue that a constructive trust should be imposed by the Court based on mistake (CCISD Mot. at 8), it sets forth no evidence that it paid the money to Braselton based on a mistake. *Contra Cocke v. Pacific Gulf Dev. Corp.*, 594 S.W.2d 545, 548-49 (Tex.App. [Houston–1st. Dist.] 1980, *no writ*) (constructive trust could be imposed when individual owed an amount, but based on an accounting error mistakenly paid the wrong party).

Therefore, in the absence of any meaningful evidence, the Court declines to find, at this point of the proceedings, that CCISD is entitled to the imposition of a constructive trust in its favor or to summary judgment in its favor with regard to the interpleaded funds. Accordingly, CCISD's Cross Motion for Partial Summary Judgment (Instrument No. 35) is will be **DENIED**.

## III.

## DEFENDANT BRASELTON'S MOTION TO DISMISS

Defendant Braselton seeks dismissal of Defendant CCISD's cross-claims for (1) breach of contract; (2) breach of warranty; (3) deceptive trade practices; (4) fraud and fraudulent misrepresentation; (5) negligent misrepresentation; and (6) indemnification. Braselton contends these claims should be dismissed because the claims do not arise out of the same transaction or occurrence that is the subject matter of the original action or the funds interpleaded to the Court as is required

under Rule 13(g) of the Federal Rules of Civil Procedure.  (Braselton Mot. at 6).[13]  The Court disagrees.  Where an interpleader action was properly brought under Rule 22 and 28 U.S.C. § 1332, the addition of cross-claims will not defeat jurisdiction in the matter.  *Travelers Ins. Co. v. First Nat'l Bank*, 675 F.2d 633, 638 (5th Cir. 1982); *see also Zurn Indus. v. Acton Constr. Co.*, 847 F.2d 234, 236-37 (5th Cir. 1988) (once jurisdiction is established over the original action, a court may exercise supplemental jurisdiction over cross-claims brought under Rule 13(g), even in the absence of an independent basis for federal jurisdiction).  Claimants may assert "cross-claims against each other, as in any other civil action, assuming, of course, the requirements of Rule 13(g) are met."  7 Wright, Miller & Kane, *supra* § 1715.

Rule 13(g) provides that "[a] pleading may state as a cross-claim any claim by one party against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein or relating to any property that is the subject matter of the original action.  Such cross claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all of part of a claim asserted in the action against the cross-claimant."  Fed. Rule Civ. Proc. 13(g).

"A claim which satisfies the 'transaction or occurrence' test of Rule 13(g) necessarily must be closely related to the original action."  *Travelers*, 675 F.2d at 638.  More specifically, courts have explained that "[t]he key is the requirement that, for a nondiverse claim to be considered ancillary to a diverse one, it must not only arise from the same 'core operative facts' as does the diverse claim, but it must also bear a 'logical relationship' to that claim."  *Id.* (*citing*, *Owen Equip. & Erection Co.*

---

[13] Also pending before the Court are Braselton's cross-claims against CCISD for breach of contract and claim for quantum meriut.  (*See* Braselton Original Answer).  However, the Court notes that CCISD has not filed a motion to dismiss these claims and, therefore, they would remain before the Court.

*v. Kroger*, 437 U.S. 365 (1978).)

Based on the existing facts in the instant case, the Court finds that the cross claims asserted by CCISD against Braselton arise from the same transaction which gives rise to the original claim, clearly comprise an integral part of the original claim–the determination of the owner of the interpleaded funds, and can be determined without a "substantially distinct effort at fact-finding." *Amco Constr. Co. v. Mississippi State Building Comm'n*, 602 F.2d 730, 733(5th Cir. 1979). Moreover, given the facts of the case, the Court concludes it necessary to decide the proposed cross-claims to "protect the integrity of the original claim or to insure that the disposition of the original claim would not have been frustrated." *Travelers*, 675 F.2d at 638 (*citing, Amco Constr.*, 602 F.2d at 733).

Finally, even if the cross-claims arise out of the same transaction, Braselton urges the Court to decline to exercise supplementary jurisdiction over CCISD's cross-claims because the cross-claims "clearly raise complex State issues" and would "predominate over the single issue of the determination of the parties' respective rights to the interpled funds." (Braselton Mot. at 12). 28 U.S.C. § 1367(c)(a). The Court respectfully disagrees. Having reviewed the pleadings and evidence submitted in this case, the Court finds that the State claims asserted by CCISD in its cross-claim raise neither novel nor complex issues of State law. Further, the Court is not inclined to conclude that the cross-claims will predominate over the determination of the issue of to whom the funds belong. Instead, the facts and circumstances presented thus far in this case lead the Court to conclude that the cross-claims are so inextricably intertwined with the determination of ownership of the funds that it would only be proper to adjudicate these claims together as they all arise out of the same transaction or occurrence. The Court, therefore, sees no basis to decline supplemental jurisdiction of the cross-claims in this case under 28 U.S.C. § 1367(c)(a). Accordingly, Braselton's Motion to Dismiss CCISD's Cross-Claims (Instrument No. 30) must also be **DENIED**.

## CONCLUSION

Accordingly, for the foregoing reasons, Underwriters' Motion for Summary Judgment (Instrument No. 37), is **GRANTED** to the extent it seeks declaratory judgment that it has no further liability or obligation to Defendants, but its request for attorney fees and costs is, at this point, **DENIED**.  To the extent that Underwriters seeks dismissal in its Motion, this request is **GRANTED,** but **DEFERRED** until such time as the Court issues a determination regarding its request for attorney fees and costs.

It is further **ORDERED** that Braselton's Motion for Summary Judgment (Instrument No. 30) is **DENIED**; Braselton's Motion to Dismiss the Cross-Claims is **DENIED** (Instrument No. 30); and Defendant CCISD's Cross-Motion for Summary Judgment (Instrument No. 35) is **DENIED**.

Following the issuance of a Supplemental Order and Judgment, the Court will issue a Scheduling Order in this case.

**DONE** at Galveston, Texas, this _____30th_____ day of June, 2006.

_____

John R. Froeschner
United States Magistrate Judge

23