IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| THE UNDERWRITERS GROUP, INC. | § § § | |
| v. | § § | CIVIL ACTION NO. G-05-334 |
| CLEAR CREEK INDEPENDENT SCHOOL DISTRICT, ET.AL. | § § | |

**OPINION AND ORDER**

Before the Court, with the consent of the parties[1], is Defendant Clear Creek Independent School District's ("CCISD") Motion for Summary Judgment against Braselton Construction Company ("Braselton"). (Docket Entry No. 59). Braselton has filed no opposition to CCISD's Motion. Nevertheless, after considering the pleadings, the evidence submitted, and the applicable law, the Court, now issues this Opinion and Order which **GRANTS** CCISD's Motion for Summary Judgment.

**I. Factual Background**

In early October 2004, Braselton Construction Company submitted a bid proposal for the construction of several CCISD elementary school gymnasiums additions in the amount of $5,965,377.00 ("the Project"). CCISD Mot. Sum. J. (hereinafter "CCISD Mot."), Ex. A (McPherson Affidavit),¶¶ 2-3. In its bid proposal, Braselton identified "Financial Casualty & Surety" as its "proposed surety" and agreed to provide CCISD the bonds, insurance and other documents as set forth in the bidding requirements. *Id*. at ¶ 2. CCISD selected Braselton's bid for the Project. *Id*.

---

[1] All the parties waived their right to proceed before a district judge and consented to the jurisdiction of this Court for all further proceedings. *(*Docket Entry No. 39).

1

CCISD and Braselton executed a written contract on October 26, 2004, that consisted of a "Standard Form of Agreement between Owner and Contractor," "General Conditions of the Contract for Construction," and a "Supplementary Conditions to the Contract for Construction" (hereinafter collectively referred to as the "Contract"). *Id*. at ¶ 3; Ex. A-1 (the Contract). In conformity with the Texas Government Code and as mandated by the Contract, Braselton was required to obtain, execute, and submit performance and payment bonds, issued by a qualified surety company, before work could commence on the Project. *Id*.

On October 29, 2004, a Performance Bond was purportedly issued, witnessed, and executed between the Surety, "Financial Casualty & Surety," by Senior Underwriter Robert S. Harrison, and the Principal, Braselton Construction Company, by President Walter Drane, in Corpus Christi, Texas. CCISD Mot., Ex. A,¶ 4; Ex. A-2 (the Bonds). A Payment Bond was also purportedly issued which signified the Principal as Braselton Construction Company and the Surety as Financial Casualty and Surety. *Id*. Braselton furnished CCISD with documents which Braselton claimed were valid payment and performance bonds (the "Bonds"). *Id*.

Braselton commenced work on the Project and, shortly thereafter, on November 19, 2004, submitted an "Application and Certificate for Payment" ("Application") to CCISD through the Project architect. In the Application, Braselton included the costs and premiums associated with the purported Bonds. *See* CCISD Mot., Ex. A (McPherson Affidavit),¶ 4. The Project architect certified the Application and CCISD promptly issued payment. From this first payment, and unbeknownst to CCISD, Braselton and/or Harris used the money it charged CCISD, not for the payment of the corporate surety bonds as required by Texas law and the Contract, but for payment of the premium for a "Trust Receipt." *Id*. at ¶¶ 4-5. Although the Trust Receipt named CCISD as the beneficiary, Braselton did not provide CCISD with a copy of the instrument, nor was CCISD even aware of its

2

existence until after it discovered the purported Bonds were invalid and/or fraudulent. *Id.* ¶ 5.

Braselton continued work on the Project and, on March 1, 2005, submitted its fourth Application for payment in the amount of $397,814.04. During this same time period, CCISD learned that the Bonds provided by Braselton were not issued by a licensed corporate surety and that the Bonds provided to it were, in fact, invalid and/or fraudulent. *Id.* at ¶ 6. CCISD brought the issue of the invalidity of the Bonds to Braselton's attention and, on or about March 9, 2005, CCISD gave written notice to the President of Braselton Construction that it was to suspend work on the Project immediately and provided Braselton with seven (7) days to remedy the problem by securing valid payment and performance bonds. *Id.* at ¶ 6; Ex. A-3. Braselton was unable to do so. CCISD Mot., Ex. A, ¶ 6. On March 23, 2005, CCISD informed Braselton that, due to its failure to provide the Bonds for the Project, it was terminating the Contract for cause. *Id.*

Following the termination, CCISD was then forced to secure a fully bonded replacement contractor, Morganti Texas, Inc., to complete the work on the Project. *Id.* at ¶ 7; Ex. A-4. The additional costs CCISD incurred to complete the Project, over and above what CCISD would have paid Braselton under the Contract and as certified by the Project architect, totaled $416,623.48. *Id.* at ¶ 7; Exs. A-4, A-5, A-6. In addition, CCISD was required to pay, on behalf of Braselton, the unpaid subcontractors and suppliers who had filed liens against CCISD when Braselton failed to pay them for their work or supplies. *Id.* at ¶ 8; Ex. A-7. CCISD paid $365,453.35 to the subcontractors and suppliers and secured lien releases. *Id.*

## II. Procedural History

Following the termination of Braselton from the Project, Underwriters cancelled the Trust Receipt and sought to refund the premium paid for the Trust Receipt to the proper party. Due to the competing claims for the funds from Braselton and CCISD, Underwriters filed an interpleader action

and deposited the funds into the registry of the Court. CCISD and Braselton filed an answer to the interpleader action and also filed cross-claims against each other, to which each party filed answers.

On October 27, 2006, the Court dismissed Underwriters from the interpleader action and, after awarding Underwriters attorneys' fees, the interpleaded funds remained in the Court's registry. (Docket Entry Nos. 46 & 49). On or about January 22, 2007, CCISD and Braselton reached a settlement with regard to their dispute concerning the balance of the interpleaded funds and executed a settlement agreement. (Docket Entry No. 58). Specifically excepted from the settlement agreement was CCISD's claims, presented in their cross-claim, against Braselton for breach of the Contract and other related claims. (Docket Entry Nos. 56, 58). Pursuant to the settlement agreement, the Court entered an Order (Docket Entry No. 58) preserving CCISD's breach of contract and related claims for further consideration and released $187,720.56, the remaining balance of the interpleaded funds, to CCISD. CCISD Mot., Ex. A, ¶ 9.

### III. Motion for Summary Judgment

CCISD filed a Motion for Summary Judgment against Braselton on the breach of contract claim. CCISD alleges that Braselton's failure to provide valid Bonds, in conformity with statutory and contractual provisions, constituted a material breach of the contract for construction, as a matter of law, which entitled CCISD to terminate the Contract. CCISD further alleges that, as a result of the breach, it has suffered significant financial hardship, which included: (1) the additional construction costs it incurred, over and above the original contract price and totaling $416,623.48, by having to secure a bonded replacement contractor to complete the Project; and (2) the amounts it was required to pay under Texas law, in an amount totaling $365,453.35, to act as a surety on the Project by paying, on behalf of Braselton, the unpaid subcontractors and suppliers. CCISD further requests, if it prevails, the recovery of attorneys' fees incurred as a result of the breach of the written contract.

A. <u>Standard of Review</u>

Under Federal Rule of Civil Procedure 56(c), "if there is no genuine issue as to any material fact...the moving party is entitled to judgment as a matter of law." Federal Rule Civ. Proc. 56(c). The inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Once the moving party makes a properly supported motion for summary judgment, the burden shifts to the non-movant to show that summary judgment should not be granted, that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321-25 (1986). A party opposing summary judgment must marshal sufficient facts to show that there is a genuine issue of material fact. *Id.* at 323-24. To determine whether a genuine issue exists for trial, the court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *Anderson*, 477 U.S. at 248; *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000).

B. <u>Breach of Contract Claim</u>

CCISD seeks summary judgment against Braselton on the breach of contract claim. To support a breach of contract claim in Texas, CCISD must establish: (1) the existence of a valid, enforceable contract; (2) privity between the parties; (3) performance or tendered performance by the plaintiff; (4) breach of the contract by the defendant; and (5) injury to the plaintiff as a result of the breach. *Valero Mktg. & Sup. Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex.App.–Houston [1st Dist.] 1995, no writ).

As urged by CCISD, there is no dispute that a valid, enforceable contract existed between

CCISD and Braselton for the construction of the Project, that the parties were in privity, or that CCISD performed or tendered performance of the Contract. Similarly, there is also no dispute that the Contract required Braselton to provide the Bonds and that the Bonds that Braselton submitted to CCISD for the Project proved invalid and/or fraudulent. The central issue is whether Braselton's failure to provide valid Bonds for the Project constituted a breach of the Contract, as a matter of law, which authorized CCISD to terminate the Contract.

In the present case, the Contract between the parties provided that CCISD had the power and authority to suspend the contractor's work upon a breach, as well as the authority to terminate the contract for cause. CCISD Mot. Sum. J., Ex. A, A-1. In particular, Article 14 of the Contract reveals the parties' agreement in the event of "termination or suspension of the contract." *Id*. The Contract provides:

> §14.2 TERMINATION BY THE OWNER FOR CAUSE
>
> §14.2.1   The Owner may terminate the Contract if the Contractor:
>
> \*   \*   \*
>
> .3 persistently disregards laws, ordinances, or rules, regulations or orders of a public authority having jurisdiction, or
>
> .4 *otherwise is guilty of substantial breach of a provision of the Contract Documents*. [Emphasis supplied].

*Id*. Pursuant to General Conditions section 14.2.2 and, after proper notice was given, CCISD terminated its Contract with Braselton for cause. CCISD Mot., Ex. A, ¶ 6. Therefore, as stated, the operative question is whether Braselton's failure to provide valid Bonds, constituted a material or substantial breach of the Contract.

A party breaches a contract when it neglects or refuses to perform a contractual obligation. *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex.App.-Houston [14th Dist.] 2006, writ denied). If the

6

breach is material, the other party is excused from further performance of the contract. *See Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex.1994). Texas courts apply the considerations set forth in RESTATEMENT (SECOND) OF CONTRACTS § 241(a) (1981) in determining whether the breach was material. *Mustang Pipeline Co., Inc v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 199 (Tex. 2004). The factors are:

> (1) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (2) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (3) the extent to which the party failing to perform or to offer performance will suffer forfeiture;
>
> (4) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and
>
> (5) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Id.*; RESTATEMENT (SECOND) OF CONTRACTS § 241(a). A court's primary consideration in determining the materiality of a breach is the extent to which the non-breaching party will be deprived of the benefit it reasonably could have anticipated had the breach not occurred. *Hernandez*, 875 S.W.2d at 693. The less the non-breaching party is deprived of the expected benefits, the less likelihood the breach is material. *Id*.

There is no dispute in this case that the Contract required Braselton to furnish the Bonds. CCISD's Mot., Ex. A, A-1. In fact, not only were the Bonds required by the Contract, but section 2253.021 of the Texas Government Code,[2] also referred to as the McGregor Act, mandated the Bonds

---

[2] The Court notes in passing that there is no question that the statute applied.

be provided. In particular, the Texas statute provides:

> (a) A government entity that makes a public work contract with a prime contractor shall require the contractor, before beginning the work, to execute to the governmental entity:
>
> > (1) a performance bond if the contract is in excess of $100,000; and
> >
> > (2) a payment bond if the contract is in excess of $25,000.
>
> (b) the performance bond is:
>
> > (1) solely for the protection of the state or governmental entity awarding the public work contract;
> >
> > (2) in the amount of the contract; and
> >
> > (3) conditioned on the faithful performance of the work in accordance with the plans, specifications, and contract documents.
>
> (c) The payment bond is:
>
> > (1) solely for the protection and use of payment bond beneficiaries who have a direct contractual relationship with the prime contractor or a subcontractor to supply public work labor or material; and
> >
> > (2) in the amount of the contract.
>
> (d) A bond required by this section must be executed by a corporate surety in accordance with Section 1, Chapter 87, Acts of the 56th Legislative, Regular Session, 1959 (Article 7.19-1, Vernon's Texas Insurance Code).

Tex.Gov't Code, § 2253.021. Further, under Texas law, regardless of the intent of the parties, these statutory provisions are by operation of law "incorporated in and become part of all bonds executed and furnished by general contractor for construction of public works or public buildings." *United Tile Co. v. Kermit Independent School Dist.*, 273 S.W.2d 434, 437 (Tex.Civ.App.–El Paso 1954, writ ref'd n.r.e.); *see also*, *City of San Antonio v. Argonaut Ins. Co.*, 644 S.W.2d 90 (Tex.Civ.App.–San Antonio 1982, writ ref'd n.r.e.(1983)), *City of Marshall v. American General Ins. Co.*, 623 S.W.2d 445 (Tex.Civ.App.–Texarkana 1981, no writ).

The purpose underlying the Texas statute "was to protect persons furnishing material or labor in the construction of public works against which there could exist no lien for their protection." *Overstreet v. Houston County*, 365 S.W.2d 409, 413 (Tex.Civ.App.–Houston, 1963) (quoting *Globe Indemnity Co. v. Barnes*, 288 S.W. 121, 123 (Tex.Com.App. (1926)). The legislature chose to protect this group by requiring the prime contractor to furnish a payment bond, conforming to the statutory requisites, payable to the awarding governmental authority. *Id*. Significantly, however, the Texas Legislature added to the McGregor Act by enacting section 2253.027, which now imposes liability on the governmental entity when the bond required under section 2253.021 is not obtained. Tex.Gov't Code Ann. § 2253.027 (West 2003). Accordingly, since a governmental entity is now exposed to liability, there is little doubt that the "[b]onds and insurance constitute significant instruments of risk allocation that, if not procured and maintained in force, materially shift to the owner the risk of nonperformance." Philip L. Bruner, et.al., *Bruner & O'Connor on Construction Law*, § 18.31 (West. 2002). Thus, when the contractor fails to furnish or maintain the required bonds, it is invariably deemed "to constitute a material breach of the contract." *Id*.; *see Overstreet v. Houston County*, 365 S.W.2d 409 (Tex.Civ.App.–Houston 1963, writ ref. n.r.e.) (concluding that where the contractor commenced construction work without giving the prescribed bonds, the governmental entity had the power and authority to avoid or terminate the contract if the contractor did not furnish such bonds); *City of Ingleside v. Stewart*, 554 S.W.2d 939, 945 (Tex.Civ.App.–Corpus Christi 1977, writ ref'd n.r.e.) (same); *see also*, *Airport Industrial Park, Inc. v. United States*, 59 Fed. Cl. 332 (Fed. Cl. 2004) (holding the failure to furnish adequate bonding required by a government procurement contract was a substantial, material breach under similar federal statute).

Considering the law, combined with the summary judgment evidence submitted, the Court finds, as a matter of law, that Braselton's failure to furnish valid Bonds as required by the Contract

and the Texas statute, was a substantial, material breach of the Contract that, left uncured,[3] authorized CCISD's termination of the Contract for cause.

For these reasons, CCISD's Motion for Summary Judgment is **GRANTED** on this point.

### C. Measure of Damages

The Court turns to the issue of damages. CCISD claims it "suffered significant financial damage as a direct result" of Braselton's breach, and seeks damages under the Contract. CCISD's Mot. at 13. Article 14 of the Contract reveals the parties' agreement in the event of "termination or suspension of the contract." CCISD's Mot., Ex. A, A-1. Further, the Contract specifically addresses the measure of damages owed in the event of a breach. In particular, the Contract provides, in relevant part, the following:

> §14.2 TERMINATION BY THE OWNER FOR CAUSE
>
> \* \* \*
>
> §14.2.4 If the unpaid balance of the Contract Sum exceeds the cost of finishing the work, including compensation for the Architect's services and expense made necessary thereby, and other damages incurred by the Owner and not expressly waived, such excess shall be paid to the Contractor. If such costs and damages exceed the unpaid balance, the Contractor shall pay the difference to the Owner. The amount to be paid to the Contractor or owner, as the case maybe, shall be certified by the Architect, upon application, and this obligation for payment shall survive termination of the Contract.

The unpaid balance of the Contract totaled $5,420,738.54. CCISD's Mot., Ex. A, ¶ 7; Exs. A-4; A-5. Following Braselton's termination, CCISD paid Morganti Texas, Inc., the replacement contractor, $5,837,362.02 to complete the original scope of the work of the Project. CCISD's Mot., Ex. A, ¶ 7; Exs. A-4; A-6. Pursuant to the express terms of the Contract, since the cost of finishing

---

[3] CCISD provided Braselton an opportunity to cure the defect, but Braselton was unable to do so.

the work exceeded the unpaid balance, Braselton is obligated to pay CCISD the difference. The additional costs, totaling $416,623.48,[4] reflects the amount CCISD is entitled to recover from Braselton in damages under the Contract.

The Court, therefore, **GRANTS** CCISD's Motion for Summary Judgment on this point.

### D. Right to Subrogation

CCISD also seeks to recover the amount it paid to laborers and materialmen on behalf of Braselton, which totals $365, 453.35. CCISD maintains it is entitled to recover this amount under the doctrine of equitable subrogation.

"[T]he right of subrogation of the Surety is founded solely upon the equitable principle of having paid, pursuant to a bound obligation to do so, what in equity should have been paid by the contractor." *Trinity Universal Ins. Co. v. Bellmead State Bank*, 396 S.W.2d 163, 168 (Tex.Civ.App.–Dallas 1965, writ ref'd n.r.e. (1966)). "Subrogation requires (1) the party to have paid a debt to a third party on behalf of the other party and (2) that he must have been compelled to do so, such as by a surety agreement." *Lyndon Prop. Ins. Co. v. Duke Levy & Assoc.*, 475 F.3d 268, 271 (5th Cir. 2007).

CCISD has submitted competent summary judgment evidence demonstrating that it has established each of the required elements. Specifically, under Texas law, Braselton's unpaid subcontractors and suppliers filed mechanics and materialmen's liens against CCISD on the money they were due from Braselton. CCISD's Mot., Ex. A, ¶ 8. CCISD was compelled to pay these claims on Braselton's behalf. Tex.Gov't Code Ann. § 2253.027(a). Finally, as established by the lien

---

[4] CCISD acknowledges that any damages awarded shall be reduced by $187,720.56, which is the amount of the Interpleaded Funds that CCISD received as a result of its partial settlement with Braselton in January 2007. CCISD's Mot. Sum. J. at 16; Ex. A, ¶ 9.

11

releases obtained and submitted as evidence herein, CCISD paid the claims, in the amount stated, on behalf of Braselton. CCISD's Mot., Ex. A, A-7 (McPherson Affidavit and attached releases). Accordingly, having established it is entitled to equitable subrogation, CCISD is entitled to recover the amount paid, totaling $365,453.35,[5] from Braselton.

The Court, therefore, **GRANTS**  CCISD's Motion for Summary Judgment on this claim.

**F.  Attorney Fees**

In the event that it prevails, CCISD seeks the recovery of attorney's fees in the amount of $54,898.50 that it incurred as a result of prosecuting its breach of contract claim, including the underlying interpleader action that resulted from Braselton's failure to provide valid bonds for the Project (CCISD's Mot., Ex. B), as authorized by Texas law. Tex.Civ.Prac. & Remedies Code §§ 38.001(8), 38.002. In addition, CCISD seeks $28,566.25 in attorneys' fees "related to the termination of the Contract, the procurement of and contracting with a replacement contractor, and the processing and payment of Braselton's unpaid subcontractors and suppliers claims, all proximately resulting from Braselton's breach of the Contract." *See id*; CCISD's Mot. at 16-17; Ex. B. CCISD, thus, seeks attorneys' fees totaling $83,464.75. CCISD's Mot., Ex. B.

Under Texas law, a party is allowed to recover attorney fees for enforcing an oral or written contract. Tex.Civ.Prac. & Remedies Code §§ 38.001(8), 38.002. Texas law placed the burden of proof on the party seeking the recovery of attorney's fees and requires it to show what costs have been incurred. *Stewart Title Guarantee Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991).

In support of its burden, CCISD has submitted an affidavit from counsel explaining the rate charged for the work and the amount of time expended. CCISD's Mot., Ex. B. Having reviewed

---

[5] *Supra* note 4.

counsel's affidavit in accordance with *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and finding it that it constitutes competent evidence, the Court concludes that the fees are reasonable and that the work performed by counsel arose out of, or resulted from, the breach of the written contract. Accordingly, CCISD, as the prevailing party, is entitled to attorneys' fees in the amount of $83,464.75.

## **CONCLUSION**

For all these reasons, the Court finds CCISD's Motion for Summary Judgment (Instrument No. 59) is **GRANTED**. The Court further **ORDERS** that CCISD is **AWARDED** damages in the amount of $594,356.24,[6] and attorneys' fees in the amount of $83,464.75.

**IT IS SO ORDERED.**

**DONE** at Galveston, Texas, this     9th     day of January, 2008.

_____
John R. Froeschner
United States Magistrate Judge

---

[6] *Supra* note 4.